Cases No. 19-1885, Mark Dunning Industries v. United States. Mr. Cholosky. Yes, good morning, Your Honor, and may it please the Court. Your Honor, we're here to discuss a bid protest matter involving a solid waste collection contract at Fort Benning. My client was one of two bidders under an IFB, and simply put, Your Honor, the procurement was just replete, rife with errors from the start, and that those errors bled through and materially prejudiced my client in connection with the award decision. The award went to a contractor with known errors in its bid that were identified by the agency at the time and ignored. The bid was 30 percent below the government estimate, and again, Your Honor, specific errors were identified by the government but then never followed through on. So we are asking the Court under the arbitrary and capricious standard to set aside the agency's action here and find it not in accordance with the law. And Your Honor, there are so many errors in this procurement as you've seen in our briefs that I'm going to focus on just three today, Your Honor, and just to lay those out in advance. The first thing I'd like to discuss is the awardee, Zero Waste, I'll call them ZWS today if that's okay, or Zero Waste, did not accept all amendments to the procurement as is specifically required by the IFB. The second issue I'd like to discuss is that there was an obvious mistake or error in the bid in that it was on a reasonably low, the government, again, specifically noted that error and required a bid verification but then ignored the indications in that bid verification received from the awardee or, at that point, the apparent awardee that it did not understand, it would not be providing all of the scope required under the IFB. And the third thing I'd like to discuss, Your Honor, is the differing information regarding the laydown yard that was provided to the different offerees and, at a minimum... Okay, on that third point, Mr. Slawskis, this is Judge Dyke, on that third point, what is the evidence in the record that they were supplied during the award process with different information as to the availability of the laydown yard? The information or the evidence in the record is that the laydown yard, the cost of the laydown yard was included in Mark Dunning's proposal, but not in the... Can I ask my question? What evidence is there in the record that they were provided with different information as to the government supplying a laydown yard? Well, at the risk... Your Honor, that's the evidence that we have at that time, is that one offeror bid it and the other one didn't based on apparent assurances, which, as you can see in our... Where are the apparent... Where are the assurances reflected in the record where there was different information given? Well, it would be unreasonable, Your Honor, and, in fact, a violation, and it was a violation, to not include a required element of the bid... You're not answering my question. My question is, is there evidence in the record that they were supplied with different information? Not of the actual conversation, Your Honor, if that's where you're going, no. We'd have to go off of the way the different offerors approached the procurement differently, and we could also go off of what actually happened. So, if there are no more questions on that, I'll move to the amendment number 12 issue. And this is really largely not in dispute. There's no question from the government that there was an amendment number 12. There's no argument that Zero Waste did not acknowledge that amendment. There's only two issues. There's the claim that the amendment was either not material or that it was constructively accepted by Zero Waste, and we think that neither is true. Both arguments focus on the CLIN headings in the first part of the amendment and ignore the Q&A, which significantly addresses, for the only time, the question of, with respect to specific CLINs 7, 8, and 9, what would happen if there was an overrun? And the government specifically responded to that question by saying that if there's an overrun, you must honor your pricing. That's material, and it's significant, and it's particularly significant, Your Honors, based on the government's brief, which identifies Zero Waste bid as a buy-in low bid. So, there is a significant risk when you identify a bid as a buy-in bid that the awardee is going to attempt to make up its losses and change orders later. That's exactly what's being addressed in amendment number 12, and it's why it's material, and it's why it One offeror, MDI, agreed to honor its pricing, and the other didn't. When you have a material amendment that's not accepted, that bid is defective and cannot be used as a basis for award. The second point I'd like to discuss, Your Honor, is the fact that the bid was unreasonably low, and that's something that was identified in the trial court's opinion. The trial court rejected the government's suggestion that below, and that's repeated in its briefing here, that the government can accept a bid no matter how low. Relying on the Hyperion case, the trial court said that evidence of an unreasonably low bid can be evidence of a mistake or of a defect, and the court here said, well, the difference with Hyperion is that even though it's low, there's no evidence of a defect, and we disagree, Your Honors, and the best evidence there is the phase-in cost. The phase-in cost, and it's included in the performance work statement, section 3.2, requires the offeror to provide all services during the phase-in period. Here, the government, in appendix 1150, sent a letter saying, hey, Zero Waste, we suspect a no. We honor our phase-in cost of $15,000 based on travel and lodging only. That is clear evidence of a mistake. The government knew it was there. It didn't follow up. It ignored that, and that renders the decision to award to Zero Waste arbitrary and capricious for that reason. We also provide additional examples in the brief, Your Honor, a second being the landfill, the landfill pricing. There's no suggestion that Zero Waste actually went out and got those bids, and the bid verification letter should have been evidence of that. And then, Your Honors, the third issue is the laydown yard, which if you want to put aside the issue of whether there was unequal information provided, the fact remains that the government has not provided a reasonable explanation why those costs would not have been included in Zero Waste's bid. There have been two excuses provided by the trial court, which says the government reserved the right to provide a facility, and in doing that, it relies on amendment number four to the ISB. That amendment was overridden by amendment number nine. That was not part of the procurement and should not have been used as a basis by trial court to overlook this error. The other excuse presented in the government's brief is that the government reserved the right to provide materials, equipment, or supplies. Those are different things than facilities. The laydown yard is a facility, and the ISB expressly says that the government will not provide facilities to offerors. So, Your Honors, I believe I have about a minute remaining on my reserved time for argument, and if there are no additional questions, I'll end here and reserve any additional time for rebuttal. Okay. Any questions for Mr. Strahovski? All right. Let's hear from the government. Mr. Dixley. Thank you, Your Honor. May it please the Court. This is a straightforward case. In a sealed bid procurement where award is required to be made to the responsible bidder that submitted the lowest bid, the Army awarded a contract for solid waste disposal services to Zero Waste Solutions, the responsible bidder that submitted the lowest bid. Now, how do you know when you have a bid that's 30 percent below your estimate? Is there a presumption that that's responsible or not responsible? No, Your Honor. There's no presumption of responsibility. That is, well, case law says that acceptance is a determination of responsibility, but in this case, the contracting officer made an affirmative determination of responsibility. The contracting officer requested information from Zero Waste, financial information, which Zero Waste provided, indicating it had some $6 million in lines of credit. In addition, the contracting officer requested past performance information, which Zero Waste provided, indicating it had experience on this type of work. In addition, the contracting officer contacted these references, the financial references at Merrill Lynch and Citibank, spoke to them, and also the points of contact at the other military facilities. So, the contracting officer here made an affirmative decision of responsibility, wrote up a decision letter, and a responsibility determination is a business judgment that is afforded great deference, and the contracting officer here satisfied herself that Zero Waste was capable of performing the contract. So, there's nothing inherently wrong with submitting a low bid, even a below cost bid. Now, appellant's counsel is incorrect. The government has not argued here that it is a below cost bid. We don't actually know that, and the trial court did not find that. We simply make the point that there's nothing inherently wrong with a lower bid, and here, actually, Zero Waste bid is some 14% below Dunning's bid. Hardly a huge discrepancy, but the key point is that it's not in dispute that Zero Waste submitted a lower bid, and once the contracting officer made that determination that Zero Waste was responsible in a sealed bid procurement, the contracting officer was required then to award the contract to the lowest bidder. That was done here. It is very straightforward. If I may, I will address some of the comments raised by counsel. I believe it was a question at the beginning raised by, I believe it was Judge Dike, concerning the lay down yard. What is the evidence in the record that there was a different communications, unequal statements made to the two bidders? Well, the answer to that question is there is no evidence in the record. None. This is what the trial court found, and this is most apparent in appellant's opening brief on page 52. They address this issue, and what they reference is their own complaint, because there is no evidence. In addition, the assertion that... Ma'am, is it disputed that the present situation is that the cost of the lay down yard is being absorbed by the government? Ma'am, actually, that's... The trial court made a finding on that point as well, that Dunning's argument that zero waste did not include the cost of the lay down yard in their bid is just not evident, not apparent. And actually... I ask if it's now disputed. I gather that there has been some sort of confirmation or proceeding since all of this is resolved. No, ma'am. What I would say is it's disputed in the sense that we did not concede the point they're making. It's actually not apparent from the bids, from the proposals. That wasn't my question. Yeah, I'm sorry if I'm misunderstanding your question. Is it disputed, is the government's position that the cost of the lay down yard is not being provided to the contractor? Let me clarify what the solicitation... Yes, the government reserved the right to provide a free lay down yard. It is not... In the solicitation itself, the solicitation did not require bidders to price that. So there's sort of conflicting provisions in the solicitation. And it's actually not clear from the bids submitted whether the bidders actually included it. It's just not apparent from their proposals. Neither proposal actually mentions a lay down yard. The answer to Judge Newman's question is yes, the government is providing a free lay down yard, right? That is actually on the record. The answer to that is the government reserves the right to whether they actually did. Are you saying that there's a dispute? Certainly by the time one works one's way through the papers, it seems to be clear that it's known what the government action is as far as the successful bidder is concerned. You're saying that that's incorrect? Yes. I'm saying, precisely speaking, it was simply not clear whether that was actually done pre-award. One would have to accept, for example... It was done pre-award, but after the award, the record shows they're providing a free lay down yard. Why are you fighting this? I'm sorry. I'm actually not fighting it, just trying to be clear. I think the evidence... Mr. Pixley, let me interrupt, Mr. Pixley. This is not a hard question. Either the government is or is not providing a lay down yard to zero waste. It may not be in the record. It may be post-award. It may not be relevant for any number of reasons to the actual case, but it's a fact. Either you know the answer or you don't. Is the government providing a lay down yard to zero waste or is it not? To answer your question, I believe that is the case and that is what Dunning alleges in the Rule 60 motion and the court found assuming this to be true. I don't have any to doubt that. Yes. The answer is yes. You have arguments as to why that still doesn't, you know, shouldn't make any difference in this case, but the answer is yes. Right. It shouldn't make any difference whatsoever. If one bid is considered including the cost of the lay down yard and the other bid is considered submitted without the cost of the lay down yard, how can they be directly compared in terms of how much difference there is between them? Ma'am, that's where we don't concede and the trial court addressed this. Zero waste may very well have included the cost of the lay down yard in their other clins. The lay down yard was not a specifically priced clin. The word lay down yard does not appear in the solicitation or in the proposals and the court found presumably they may have included it just as Dunning may have included it or not. It's just not apparent. So we do not concede that point and actually the trial court in its decision on the Rule 60 motion at footnote eight addresses this. The court notes the two proposals look very similar. Dunning itself in its proposal never makes references to lay down yard. So the only time that Dunning asserts that it included the cost of the lay down yard in its proposal was in its verification of the bid. But again, there's no indication for either of these bidders. They may well have or not. The verification of the bid is immaterial. That's critical, is it not, to the process? Yes, ma'am. And I would point out that actually the agency sent virtually identical emails to both bidders to verify their bids because both bids came in under the government estimate. That was the reason. But yes, that is correct that Dunning in its verification stated that it included the cost of a lay down yard. If I still have some more time, I will address then the issue of Amendment 12 and acceptance of the amendment. Amendment 12 very quickly stated that the unit description for CLIN 2005 should be changed from job to months. And it is undisputed that Zero Waste did not submit a signed form for Amendment 12. But Zero Waste did, in fact, accept the amendment. And it did so pursuant to FAR 14.405D1, which states, in effect, that a contractor may acknowledge receipt of an amendment to an invitation for bids, but only if the bid received clearly indicates that the bidder received the amendment. Well, there's no question that in its proposal, Zero Waste for CLIN 2005 changed the unit description from job to months, clearly indicating that it received the amendment, and therefore, by virtue of paragraph D1, accepted the amendment in its entirety, including the Q&A section. Amendment 12 is a one-page document. It makes no sense to Zero Waste accepted the amendment and held out that it would be bound by it. And that is simply not an issue that should be disputed. Therefore, subject to the court's questions, I think I've addressed most of the issues here. We ask, therefore, that the court affirm the decision of the trial court. Okay. Any more questions for Mr. Pixley? I hear none. All right, Mr. Silovsky, you have your rebuttal time. Yes, Your Honor. Thank you, and again, may it please the court. I'd like to address two points in rebuttal to Mr. Pixley's arguments. The first is probably less important but easier to address. Mr. Pixley said I was wrong that the government has identified this as a low bid, and I would just direct the court to page 32 of the government's response brief, in which it specifically refers to this as a, and uses quotes, a buy-in, arguing that low bids like this are permissible as buy-in bids. That's what I was the more important point, and that's Mr. Pixley started his argument by saying this is a very easy and very straightforward case where the government identified a low bidder and awarded to that low bidder, and that's incorrect. As Your Honor picked up on, there is the bid verification process here. This was not a simple case of identifying a low bidder and awarding them the bid. The government sent Zero Waste a letter that said we have identified problems with your bid, potential mistakes, possible errors, and as Your Honor pointed out, at that point, the response to the bid verification becomes critical, and there are two issues that we've discussed during this argument, and there are more in our brief, but I'm limited in time. The first is the phase-in cost. Based on the Zero Waste response to the phase-in, they identified that they had bid $15,000 for travel and lodging. That is not enough to cover the actual phase-in cost. It doesn't include all of the requirements of phase-in work, and that should have signaled to the government that there was an error. Instead, the government did no follow-up and awarded it anyway. The second is very material at that point. The government solicited comments from Mark Dunning about what was wrong with Zero Waste bid. One of the points that Mark Dunning made was they're not bidding a lay-down yard, and we can have a separate conversation about the misinformation, but at that point, Mark Dunning was aware that Zero Waste had been given different information or believed that Zero Waste had been given different information and said, our bid includes the cost of the lay-down yard. Theirs doesn't. And despite Mr. Pixley said it over and over, it doesn't make it true. The government did not reserve the right to provide a lay-down yard. It did that in Amendment 4. That amendment was overridden by Amendment 9. The ISB and the performance work statement are very clear that there are no government facilities provided and no reservation of rights to provide those facilities. So at the time the government made the award, it was very aware of the lay-down yard issue and proceeded anyway. And as your honors have noted, it is now a known fact that the government did provide a lay-down yard at no cost in violation of the ISB. If there are no questions, your honors, I will end my time. Any more questions for Mr. Swarovski? All right. Thanks to both counsel. The case is taken under submission.